*E-FILED - 12/8/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY WAYNE SMITH,<br><br>             Petitioner,<br><br>   vs.<br><br>JAMES YATES, Warden<br><br>             Respondent. | No. C 08-0007 RMW (PR)<br><br>ORDER DENYING PETITION<br>FOR WRIT OF HABEAS<br>CORPUS |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This court found that the petition stated cognizable claims and ordered respondent to show cause as to why the petition should not be granted. Respondent filed an answer addressing the merits of the petition.  Petitioner did not file a traverse.  Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and DENIES the petition.

**BACKGROUND**

On July 11, 2005, around midnight, Paul J. Gonzalez ("Gonzalez") was working in the front bedroom of his two bedroom house. (Resp. Ex. 6, (People v. Smith, California Court of Appeal, Sixth Appellate District, Case No. H030362, September 5, 2007) at 3.) His fiancee, Monika N. ("Monika"), was in the backroom. (Id.) Gonzalez left the garage

1  door open and the garage light on.  (Id.)  He heard some noise in the garage and needed a
2  tool, so he decided to investigate.  (Id.)  He saw petitioner walking down his driveway
3  and into the street carrying a radio/CD player and a toolbox that Gonzalez kept in his
4  garage.  (Id.)  Gonzalez did not know petitioner, but noted that he resembled his deceased
5  uncle.  (Id.)  He asked petitioner what he was doing and petitioner told him to ignore him
6  and leave.  (Id.)  Gonzalez replied that the items belonged to him, but petitioner refused to
7  give them back.  (Id.)  Gonzalez then yelled for someone to call the police.  (Id.)  Monika
8  came out and yelled to Gonzalez that she was going to call 911.  (Id.)  Petitioner replied,
9  "call the police, and I'll be back to get you," while making a gesture as though he were
10 reaching for something.  (Id.)

11     Monika called 911 at 12:23 a.m. and petitioner ran towards The Alameda with the
12 radio and toolbox.  (Id. at 3-4.)  The police arrived within a few minutes.  (Id. at 4.)
13 Gonzalez described the assailant as an older white man with a white moustache and
14 wearing two shirts.  (Id.)  Within another five minutes, Officer Jarod Johnson drove
15 Gonzalez about half a mile away from his house to identify a detained suspect.  (Id.)  He
16 admonished Gonzalez that the suspect, "may or may not be the man who robbed you."
17 (Id.)  The suspect was standing alone in the middle of the street, shirtless, in handcuffs,
18 with a spotlight on him, and several uniformed officers near him.  (Id.)  Gonzalez
19 immediately identified the suspect.  (Id.)  Officers then showed Gonzalez a radio and
20 toolbox, which Gonzalez identified as his.  (Id.)

21     At 12:24 a.m., Officer Ryan Brennan received a report of an interrupted burglary
22 describing the suspect as a white male in his 40s, five feet ten inches, approximately 175
23 pounds, with a shaved head.  (Id.)  Brennan drove to The Alameda at 12:25 a.m. and saw
24 petitioner, shirtless, but otherwise matching the suspect's description.  (Id.)  At 12:27
25 a.m., Brennan arrested petitioner and searched him, but did not find any weapons or
26 missing items.  (Id.)

27     In the meantime, Officer David Kirby walked on the route between the crime
28 scene and where petitioner was detained and searched for discarded items.  (Id. at 5.)  He

1 | found a shirt with rolled up sleeves, a portable CD player, and a toolbox.  (Id.)  Monika
2 | identified the shirt as the one that petitioner was wearing.  (Id.)

On March 1, 2006, a Santa Clara Superior Court jury convicted petitioner of second degree robbery (Cal. Pen. Code §§ 211, 212.5(c)), second degree burglary (Id. §§ 459, 460(b)), and two counts of attempting to dissuade a victim or witness (Id. § 136.1(b)).  (Resp. Ex. 6 at 1, 5.)  Petitioner admitted that he had six prior strikes (Cal. Pen. Code § 1170.12) and three prior serious felonies (Id. § 667(a)), and that he served three prior prison terms (Id. § 667(b)).  (Resp. Ex. 6 at 1.)  On June 23, 2006, the trial court sentenced petitioner to an indeterminate term of 50 years to life consecutive to a determinate term of 30 years.  (Id. at 1, 5.)  The court also ordered petitioner to pay various fees and fines, including a restitution fine (Cal. Pen. Code § 1202.4(b)) and a suspended parole revocation fine (Id. § 1202.45), each in the amount of $10,000.  (Resp. Ex. 6 at 1.)

On September 4, 2007, the California Court of Appeal affirmed the conviction.  (Id.)  The California Supreme Court denied his petition for review on November 14, 2007.  (Pet. at 3.)  Petitioner then filed a state habeas petition, which the state appellate court denied on September 4, 2007, and the state supreme court denied on November 28, 2007.  (Id. at 10.)  Petitioner filed the instant federal habeas action on January 2, 2008.

## DISCUSSION

**A.  Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

1  as determined by the Supreme Court of the United States; or (2) resulted in a decision that
2  was based on an unreasonable determination of the facts in light of the evidence presented
3  in the State court proceeding." Id. § 2254(d).

4  A state court decision is "contrary to" federal law if it applies a rule different from
5  controlling United States Supreme Court authority or comes to a different conclusion
6  when presented with a case involving materially indistinguishable facts. Bell v. Cone,
7  535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

8  A decision is an "unreasonable application" of Supreme Court law if the state
9  court identifies the correct legal standard but applies it in an unreasonable manner to the
10 facts before it. Id. "The 'unreasonable application' clause requires the state court
11 decision to be more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75
12 (2003) (citing Williams, 529 U.S. at 410, 412). "The state court's application of clearly
13 established law must be objectively unreasonable." Id. (citing Williams, 529 U.S. at
14 409).

15 In any event, habeas relief is warranted only if the constitutional error at issue is
16 structural error or had a "'substantial and injurious effect or influence in determining the
17 jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v.
18 Abrahamson, 507 U.S. 619, 637 (1993)).

19 In determining whether habeas relief is warranted, this court looks to the "last
20 reasoned decision" of the state court to address the merits of petitioner's claim – here, the
21 California Court of Appeal. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991);
22 Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**B.     Petitioner's Claims**[1]

Petitioner asserts that: (1) he was denied due process under the Fifth and Fourteenth Amendments because a government witness testified that he was homeless; (2) he was denied due process under the Fifth and Fourteenth Amendments because he was subjected to a suggestive identification procedure; (3) he received ineffective assistance of counsel under the Sixth and Fourteenth Amendments due to (a) trial counsel's failure to introduce exculpatory evidence on the issue of identification; (b) trial counsel's failure to request an admonition that the stricken testimony of Officer Kirby was not to be considered as evidence of petitioner's motive to steal; and (c) trial counsel's failure to seek exclusion of Gonzalez's in-court identification of petitioner at trial; and (4) he was denied due process under the Fifth and Fourteenth Amendments due to the cumulative prejudice flowing from the errors raised on direct appeal and habeas corpus.[2]

       1.      Testimony that Petitioner was Homeless

Petitioner asserts he was denied due process because a government witness testified that he was homeless. (Pet. at 6.)

At trial, the court granted petitioner's request to exclude any mention of petitioner's poverty. (Resp. Ex. 6 at 6.) However, when the prosecution asked one of its witnesses whether the shirt found near the crime scene was dirty, the witness replied, "Probably somewhat dirty, but the subject in question was a homeless individual, so . . . " (Id.) Trial counsel moved to strike the testimony and the court sustained his objection, granted the motion, and ordered the jury to disregard the statement. (Id.) Trial counsel then moved for a mistrial based on the reference that petitioner was homeless. (Id.) The

---

[1] In the petition, petitioner refers to attachments C-F in support of his claims, but such attachments do not exist. (See Pet. at 6-12c.) As such, this court assumes that petitioner makes the same arguments as he does in his state habeas petitions. (See Resp. Ex. 9, 12.)

[2] Although petitioner raised two cumulative error claims in his petition, this court will address these claims as one.

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smithdenhc007.wpd         5

court denied the motion. (Id.)

Based on the above facts, petitioner argued in state court that "he was denied his federal constitutional right to a fair trial due to the testimony that he was homeless. He argues that evidence of his poverty was inadmissible and prejudicial, and that the trial court's admonition to the jury to disregard the evidence was insufficient to cure the prejudice." (Id. at 7.)

The California Court of Appeal rejected petitioner's claim because under California law, a mistrial should only be granted if it results in prejudice that cannot be cured by admonition or instruction. (Id.) The state court found that the evidence against petitioner was strong: Gonzalez identified petitioner shortly after the robbery and testified that petitioner resembled Gonzalez's deceased uncle; both Gonzalez and Monika identified petitioner at trial; Gonzalez's missing items and petitioner's shirt were found on the path that the robber had fled; and when petitioner was detained, he was shirtless and a mere 0.4 miles from the crime scene. (Id. at 8.) Further, it assumed that the jury followed the trial court's admonition and disregarded the testimony that petitioner was homeless. (Id. at 9.) Thus, the court found that it was reasonably probable that the jury would have reached the same result even if it did hear the challenged testimony and the trial court did not abuse its discretion in finding the testimony not incurably prejudicial. (Id.)

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67 (1991). But only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). Even then, the evidence must "be of such quality as necessarily prevents a fair trial." Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986)).

As an initial matter, testimony of petitioner's homelessness was not introduced as evidence: trial counsel's objection to the testimony that petitioner was homeless was sustained, the motion to strike was granted, and the jury was told to disregard the

testimony. (Resp. Ex. 6 at 7.) Further, even assuming error, petitioner has not shown that the testimony that he was homeless was so arbitrary or prejudicial that it had rendered the trial fundamentally unfair. See Estelle, 502 U.S. at 67. Even if the jury did not hear testimony that petitioner was homeless, the evidence that was presented to the jury overwhelmingly suggests that petitioner is the perpetrator: Gonzalez identified petitioner less than 15 minutes after the incident; petitioner was less than half a mile from the crime scene when the police first spotted him and ran away upon seeing them; he was not wearing a shirt nor have the stolen items on him, but these items were found between the robbery scene and where petitioner was detained; Monika identified the shirt as petitioner's and Gonzalez identified the radio and toolbox as his; and both Gonzalez and Monika identified petitioner at trial. (Resp. Ex. 6 at 4, 8.) Given these facts, even assuming error, it was harmless because the jury could have reasonably concluded that petitioner robbed Gonzalez.

The state court's decision did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d)(2).

### 2. Suggestive Identification Procedure

Petitioner also contends that his due process rights were violated because he was subjected to a suggestive identification procedure. (Pet. at 8.)

The California Court of Appeal ruled that the pretrial identification procedure was not impermissibly suggestive because the police did not improperly suggest the identity of the suspect to the witness. (Resp. Ex. 6 at 11.) It determined that Gonzalez's identification was reliable because he was given an admonition before the in-field show-up, could see petitioner well enough to note a resemblance to Gonzalez's uncle, made the identification shortly after the incident, and testified that he would not have identified petitioner if he "'had not been the person.'" (Id. at 12.) Further, it reasoned that the in-field show-up was necessary because when police are pursuing a fleeing suspect, time is

of the essence and they must quicky determine whether they have detained the correct suspect or must keep searching. (Id.)

"A conviction which rests on a mistaken identification is a gross miscarriage of justice." Stovall v. Denno, 388 U.S. 293, 297 (1967). Procedures by which the defendant is identified as the perpetrator therefore must be examined to assess whether they are unduly suggestive. "It is the likelihood of misidentification which violates a defendant's right to due process." Neil v. Biggers, 409 U.S. 188, 198 (1972). Due process protects against the admission of evidence derived from certain suggestive identification procedures. See id. at 196. Unnecessarily suggestive identification procedures alone do not require exclusion of in-court identification testimony, however, "reliability is the linchpin in determining the admissibility of identification testimony." See Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

"To prevail on a habeas claim, the petitioner must show that the identification procedures used in the case were 'so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (quoting Stovall, 388 U.S. at 301-02). Identification testimony is inadmissible as a violation of due process only if (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure. See Van Pilon v. Reed, 799 F.2d 1332, 1338 (9th Cir. 1986). A reviewing court may assume suggestiveness and review reliability first. See id. at 1339.

Even assuming the identification was suggestive, the reliability of the identification is strong. See id. at 1338-39. Gonzalez's description of the suspect's physical characteristics matched the description of petitioner. (Resp. Ex. 6 at 4-5, 12.) Gonzalez was admonished that the suspect "may or may not be the subject" and he testified that he would not have identified the suspect as the perpetrator if he "had not

been the person." (Id. at 12.) The light in Gonzalez's garage was on and allowed him a good opportunity to view petitioner. (Id. at 3.) Gonzalez testified that he was able to see petitioner well enough to ascertain that petitioner resembled his deceased uncle. (Id. at 12.) Further, Gonzalez made the identification within minutes of the crime and his identification was corroborated by the fact that petitioner was not wearing a shirt at the time of the arrest, but a shirt – which Monika identified as petitioner's – was found about half a mile from where petitioner was arrested. (Id. at 4-5.) Given the "'totality of the circumstances', the identification procedure was reliable even though the confrontation procedure [may have been] suggestive." Neil, 409 U.S. at 199. Because it is unlikely that petitioner was misidentified, petitioner's right to due process was not violated. See id. at 198; see also Van Pilon, 799 F.2d at 1338.

### 3. Ineffective Assistance of Counsel

Petitioner alleges that he received ineffective assistance of counsel because (a) trial counsel did not introduce exculpatory evidence on the issue of identification; (b) trial counsel did not request an admonition that Officer Kirby's stricken testimony was not to be considered as evidence of petitioner's motive to steal; and (c) trial counsel failed to seek exclusion of Gonzalez's in-court identification of petitioner at trial.

The California Court of Appeal summarily denied these claims. (Resp. Ex. 10 at 11.)

Claims for ineffective assistance of counsel are reviewed under the standard articulated in Strickland v. Washington, 466 U.S. 688 (1984), which is considered clearly established federal law pursuant to 28 U.S.C. § 2254(d). Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Strickland requires two separate showings: (1) petitioner must show that counsel's advice and representation were deficient and fell below an objective standard of reasonableness and (2) petitioner must demonstrate that he was prejudiced, where but for counsel's unprofessional errors, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694. "Judicial scrutiny of

counsel's performance must be highly deferential," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Additionally, both prongs do not need to be considered if petitioner fails one, and petitioner's burden cannot be satisfied by bare allegations. Id. at 697; see Morris v. State of California, 966 F.2d 448, 455 (9th Cir. 1992) (rejecting an ineffective assistance of counsel claim based on a petition unsupported by declarations and "heavy with speculation" and "wishful suggestions").

        a.      <u>Failure to Introduce Exculpatory Evidence on the Issue of Identification.</u>

Petitioner argues that he was denied effective assistance of counsel because trial counsel did not call attention to various discrepancies between petitioner's appearance and the victims' testimony as to his appearance: Gonzalez testified that the robber had blue eyes, but petitioner has green eyes; Monika told the police that the robber was 5 feet 10 inches tall and between 170 and 180 pounds, but petitioner is only 5 feet 7 inches tall and weighed 150 pounds when the crime had occurred. (Resp. Ex. 9 at 15-16.) Further, petitioner argues that trial counsel failed to call attention to the fact that petitioner was 54 years old and was thus unlikely to have been able to run 0.4 miles from the scene of the crime within four minutes. (Id. at 22.)

However, petitioner fails to show that counsel's representation fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 688. Trial counsel's decision not to call attention to petitioner's eye color or his height and weight was reasonable because he feared that focusing on the particularities of petitioner's physical characteristics would make trial counsel lose credibility, and he feared that the prosecution would call attention to the fact that petitioner's arms were tattooed from wrist to shoulder. (Resp. Ex. 9 at Ex. A (Trial Counsel's Decl.).) Trial counsel knew that Monika noticed something unusual about petitioner's arm – that they were very hairy or were tattooed. (Id.) In order to avoid having the prosecution ask petitioner to show his arms to the jury, trial counsel "elected to focus on other general factors related to witness

misidentification: darkness, duration, stress and fear, cross racial and suggestive in-field identification. . . . [he] also considered the fact that it would not be unreasonable for the witnesses to be off on the suspect's height, weight and eye color." (Id.) Further, he considered the fact that the witness identification was strong: he believed that Gonzalez and Monika would be well received by the jury; he knew that Gonzalez identified petitioner within minutes of the crime; and that petitioner's shirt and Gonzalez's stolen items were found on the path that the robber fled from the crime scene. (Id.)

Given that trial counsel determined that witness identification was strong and petitioner's tattoos were unique, it was reasonable for him to avoid drawing attention to petitioner's physical features and to focus on witness misidentification instead. As to petitioner's contention that trial counsel failed to point out that given his age at the time of the crime, he was unlikely to have run 0.4 miles within four minutes, the jury heard testimony from Officer Brennan that "[petitioner] looked in Officer Brennan's direction, immediately turned around, and started jogging away." (Resp. Ex. 6 at 6.) The jury also heard testimony that Monika called 911 at 12:23 a.m. and petitioner was apprehended at 12:27 p.m., 0.4 miles away from the crime scene. (Id. at 5-6.) Further, the jury was able to view petitioner at trial and thus, ascertain his age. Because the jury has the ability to draw conclusions from the evidence that they are presented, it was not unreasonable for trial counsel not to question witnesses' on petitioner's running ability. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689.

Because petitioner cannot demonstrate that trial counsel's representation was unreasonable, petitioner's claim for ineffective assistance of counsel fails.

    b.  <u>Failure to Request a Specific Admonition.</u>

Petitioner argues that he received ineffective assistance of counsel because trial counsel did not request an admonition that the testimony regarding petitioner's

homelessness not be considered as evidence of petitioner's motive to steal. (Pet. at 11.)

Trial counsel's decision not to ask for a more specific admonition is not objectively unreasonable because the court instructed the jury to disregard the testimony. (Resp. Ex. 6 at 7.) See Strickland, 466 U.S. at 688. Nothing in the record would have suggested to counsel that the jury would disregard the court's instruction. See Weeks v. Angelone, 528 U.S. 225, 234 (2000) (jury is presumed to follow its instructions). In addition, nothing indicated that petitioner's financial status or "motive to steal" played any role in the jury's decision. In other words, petitioner cannot establish prejudice. See Strickland, 466 U.S. at 694. Thus, trial counsel's failure to request such an admonition is not ineffective assistance.

          c.        Failure to Seek Exclusion of Gonzalez's In-Court Identification of Petitioner at Trial.

Petitioner contends that he received ineffective assistance of counsel because his attorney did not seek to exclude Gonzalez's in-court identification of him. (Pet. at 12a.)

Trial counsel made a motion in limine for the following offer of proof to exclude both pretrial identification and in-court identification of petitioner as unduly suggestive:

> Although the identification was done about five to ten minutes after the initial incident of theft and the police admonished the victim, there could have been no question that [petitioner] was nonetheless being singled out as a perpetrator. He was standing in the middle of the street. He had a police car spotlight shining on him. He had several uniformed police officers standing around him, along with marked patrol vehicles.

(CT 119.)

The prosecution filed an opposition to the motion arguing that the show-up was valuable because less than fifteen minutes had passed from the crime to the in-field identification, the suspect was less than a mile away from the crime scene, and Gonzalez was admonished that the suspect is not necessarily the robber, yet Gonzalez identified him immediately. (CT 125-26.)

The trial court denied the motion in limine reasoning, "In this matter, the court does find that the identification was made shortly after the alleged incident. The victim

was properly admonished. The defendant has not met his burden." (RT 14.)

Petitioner cannot show trial counsel's decision is objectively unreasonable nor can he show prejudice. See Strickland, 466 U.S. at 694.  Given that trial counsel's motion in limine was denied, it was not unreasonable for him to not seek exclusion of Gonzalez's in-court identification of petitioner at trial because it likely would not have been granted. See id. at 688.  "Reliability is the linchpin in determining the admissibility of identification testimony." Manson, 432 U.S. at 114.  Further, a lawyer need not file a motion that he knows to be meritless on the facts and the law.  Put simply, trial counsel cannot have been ineffective for failing to raise a meritless motion. Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).

Gonzalez's pretrial identification of petitioner was reliable: the officer gave him a proper admonition; the light in his garage gave him a clear view of petitioner, whom he identified less than fifteen minutes after the crime had occurred; and officers found petitioner's shirt and Gonzalez's stolen items on the very path that the robber fled from the crime.  (Resp. Ex. 6 at 4-6.)  Further, trial counsel made a pretrial motion in limine to exclude any in-court identification of petitioner.  (CT 119.)  Any additional motions on this claim would have been meritless.  Thus, petitioner's ineffective assistance of counsel claim fails.

    4.    <u>Cumulative Prejudice From the Alleged Errors Raised on Direct Appeal and Habeas Corpus.</u>

Petitioner contends that he was denied due process "due to the cumulative prejudice flowing from errors raised on direct appeal and habeas corpus." (Pet. at 12c; Resp. Ex. 9 at 23-24.)  In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003).  However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smithdenhc007.wpd     13

Here, petitioner has not established any constitutional error. As such, there is nothing to accumulate and petitioner's cumulative prejudice claim fails. See id.

## CONCLUSION

For the foregoing reasons, the petition for the writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 12/7/09

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.08\Smithdenhc007.wpd        14